OPINION
On October 16, 1997, the Tuscarawas County Grand Jury indicted appellant, David Stone, on one count of burglary in violation of R.C. 2911.12(A)(4). Said charge arose from an incident on May 8, 1997 wherein appellant entered the apartment of one John Stewart in order to repossess two rental items, a television and a freezer. A bench trial commenced on October 26, 1998. By judgment entry filed December 22, 1998, the trial court found appellant guilty. By judgment entry filed February 8, 1999, the trial court sentenced appellant to six months in jail, suspended in lieu of one year unsupervised community control sanctions. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT'S FINDING THAT THE ALLEGED TRESPASS OCCURRED WHEN . . . "JOHN STEWART OR ANY PERSON OTHER THAN THE DEFENDANT OR AN ACCOMPLICE WAS PRESENT OR LIKELY TO BE PRESENT" . . . IS UNSUPPORTED BY THE EVIDENCE.
 II THE TRIAL COURT'S FINDING THAT THE DEFENDANT ". . . AS A MATTER OF LAW HAD NO PRIVILEGE TO ENTER THE RESIDENCE OF MR. STEWART" . . . IS CONTRARY TO THE EVIDENCE AND TO THE LAW.
 III THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT THE DEFENDANT ACTED WITH THE REQUISITE CULPABLE MENTAL STATE FOR THE COMMISSION OF THIS OFFENSE.
 IV THE TRIAL COURT'S STATED DECISION THAT THE ALLEGED TRESPASS WAS COMMITTED BY "STEALTH" IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.
Appellant's four assignments of error challenge the trial court's finding as being against the manifest wight of the evidence. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Appellant was convicted of burglary pursuant to R.C.2911.12(A)(4) which states "[n]o person, by force, stealth, or deception, shall * * * [t]respass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." By judgment entry filed December 22, 1998, the trial court found appellant guilty based upon the following findings: FINDS that after careful, deliberate and thorough consideration of the evidence submitted at the Bench Trial of 10/26/98 and the legal arguments presented by the Prosecuting Attorney and defense counsel in their legal filings, the undersigned concludes that the State of Ohio has proved, beyond a reasonable doubt, each of the elements of the crime of Burglary in violation of Section 2911.12(A)(4), Ohio Revised Code, i.e. that this Defendant on 5/8/97, in Tuscarawas County, Ohio, by stealth, trespassed in the permanent habitation of one John Stewart at 316 Tuscarawas Avenue, N.W., New Philadelphia, Ohio when John Stewart or any person other than the Defendant or an accomplice was present or likely to be present.
FINDS that this Defendant as a matter of law had no privilege to enter the residence of Mr. Stewart on 5/8/97 and the Court further concludes that this Defendant knowingly entered the Stewart residence.
 I
Appellant claims the facts are insufficient to establish "John Stewart or any person other than the Defendant or an accomplice was present or likely to be present." We disagree. Appellant argues Mr. Stewart was not likely to be present because the entering occurred at 11:00 A.M. and Mr. Stewart regularly worked the day shift. In State v. Fowler (1983), 4 Ohio St.3d 16, the Supreme Court of Ohio reaffirmed the following decision from State v. Kilby (1977), 50 Ohio St.2d 21, paragraph one of the syllabus, on the issue of "likely to be present": Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of aggravated burglary under R.C.2911.11. In dicta at 25, the Kilby court further explained the rationale of the syllabus as follows:
 The family was in and out of the home on the day in question. It was clearly fortuitous that one or the other of the residents did not return during the course of the crime, thus confronting the danger that the statute is designed to minimize. The mere fact that appellee saw one resident inside a neighbor's house certainly did not make it unlikely that the other resident would return shortly. To the contrary, a resident's proximity to his house increases the probability that he may return. Nor does this factual situation exclude the likelihood of the presence of legitimate guests or visitors in the residence. A defendant may not rely on fortunate hindsight to reduce the gravity of his crime.
The evidence establishes on the day in question, a trailer was pulled up to the back porch and two friends of Mr. Stewart's came by in the morning "to help him move." T. at 38. Mr. Stewart testified he had taken the day off from work and had taken his son to school and returned home just in time to see appellant's truck pulling out of the driveway. T. at 75-76. Upon review, we find sufficient facts to meet the Kilby/Fowler standard. Assignment of Error I is denied.
 II
Appellant claims he established the "privilege" to enter Mr. Stewart's apartment. We disagree. Although R.C. 2911.12 does not provide a definition for trespass, we can define trespass as it is set forth in R.C. 2911.21(A)(1) "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another." Appellant argues he cannot be guilty of trespass because he had the "privilege" to enter Mr. Stewart's apartment, said privilege stemming from the following provision from his rental agreement with Mr. Stewart:
 OWNER'S RIGHT TO ENTER AND TAKE POSSESSION: The Owner and its agents upon the termination of this agreement are specifically authorized to peaceably enter upon any premises where the property may be found and Renter agrees to allow Owner to take possession of and remove the property without liability and Owner and its agents are hereby released and discharged from any claim or cause of action in or relating to entry and taking possession in accordance with this agreement and Renter agrees to indemnify Owner and its agents for all costs, expenses and damages incurred directly or indirectly from or relating to the taking possession and the removal of said property.
See, Appellant's Brief at 3; Defendant's Exhibits 2 and 3.
Appellant argues because Mr. Stewart was in default of payment on the leases, he had the right to enter Mr. Stewart's apartment and "take possession of and remove the property without liability." On May 5, 1998, three days prior to the incident, appellant had placed a note (State's Exhibit C) on Mr. Stewart's door stating he would be there on May 7, 1998 to repossess the items. T. at 78-79. Appellant did not show up on May 7, 1998 as stated in the note but did show up on the following day, May 8, 1998. T. at 79. On said date, appellant entered Mr. Stewart's apartment through an unlocked window as the door was locked. T. at 76-77. Appellant had been denied access to Mr. Stewart's apartment by the landlady and had been told repeatedly by Captain Jeffrey Urban of the New Philadelphia Police Department that he could not enter Mr. Stewart's apartment. T. at 34, 47-49. As defined by the lease agreement, appellant's "privilege" is qualified as the entering must be "peaceably" accomplished. The entry into a locked apartment through a closed, unlocked window after numerous denials of admission cannot be defined as a peaceable entrance. Pursuant to the plain reading of the lease agreement, appellant did not have "privilege" to enter Mr. Stewart's apartment. Assignment of Error II is denied.
 III
Appellant claims he did not have the requisite culpable mental state, "knowingly," to commit the crime. We disagree. Appellant argues the required mental state is to "knowingly" enter without privilege. Knowingly is defined in R.C. 2901.22(B) as "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Appellant attempted to have the landlady unlock Mr. Stewart's apartment by showing her the lease agreement. T. at 34. After the landlady refused appellant's request, appellant went to the police station and argued his right to enter with Captain Urban. T. at 35, 47-49. Captain Urban told appellant he could not enter Mr. Stewart's apartment at least ten times. T. at 36, 49. Thereafter, appellant went back to Mr. Stewart's apartment and entered through the unlocked window. Clearly from the facts and circumstances, appellant was aware that he had no right to enter the premises but chose to do so regardless of the consequences. Upon review, we find appellant's entry without privilege to do so was done knowingly. Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in finding his entry was with stealth. We disagree. "Stealth" is not specifically defined in R.C. 2911.02. However, courts of appeals have generally adopted the definition set forth in Black's Law Dictionary as discussed in State v. Ward (1993), 85 Ohio App.3d 537, 540: There is no definition of `stealth' provided in the Revised Code. However, Judge Whiteside has indicated a proper definition of `stealth,' and one by which the average person would understand the word, to be `any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.' State v. Lane (1976), 50 Ohio App.2d 41, 47, 4 O.O.3d 24, 27, 361 N.E.2d 535, 540.[1]
Appellant entered through a closed, unlocked window. T. at 77. Appellant's truck was positioned close to the porch and he waited until the landlady and the next door neighbor were away. T. at 68. Appellant admitted to gaining access to Mr. Stewart's apartment through the unlocked window and to removing the items. See, State's Exhibit D, Grand Jury T. at 19-20, 24. Upon review, we find sufficient evidence of entry by stealth. Assignment of Error IV is denied.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.
By Farmer, J. Gwin, P.J. and Edwards, J. concur.
[1] Black's Law Dictionary (6 Ed. 1990) 1413, defines "stealth" by utilizing this same definition and citing State v. Lane (1976), 50 Ohio App.2d 41, 47, 4 O.O.3d 24, 27, 361 N.E.2d 535,540.